# RICHARD PALMA
ATTORNEY AT LAW
225 BROADWAY- SUITE 715
NEW YORK, NEW YORK 10007

| | |
|---|---|
| **MEMBER OF THE BAR** | **TEL. (212) 686-8111** |
| **NEW YORK** | **FAX. (212) 202-7800** |
| | E-MAIL - rpalma177@gmail.com |

May 8, 2024

**ECF**

Honorable Jesse M. Furman
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse for SDNY
500 Pearl Street
New York, N.Y. 10007

      **Re:**    U.S. v. Terrell, et al., including Noel Carr, S1 22 Cr. 343 (JMF)
                Carr seeks a "3553 variance" of 57 months and seeks furthermore that his NYS 3-years prison term run concurrently in accordance with 18 USC §3584 & USSG §5G1.3(d).

Dear Judge Furman:

      I write to express the defense perspective on the impending sentencing of now-23-year-old Noel Carr. In view of the external obstacles Mr. Carr was compelled to confront during his formative years - poverty, family instability, foster care maltreatment – and, due to diagnoses of ADHD and Bipolar disorder that contributed to chronic academic underachievement, his limited ability to negotiate those hurdles, we respectfully suggest that, rather than the variant 84-month sentence recommended by the Probation Department, the 57 month term the parties anticipated in their plea agreement is fair to both the Government and Mr. Carr.

      On a subject on which the Probation Department opted not to opine, we submit that, on the facts before the Court, Your Honor should also exercise its discretion either pursuant to 18 USC §3584(a) to run its sentence concurrent to the 3-year NYS prison term Mr. Carr is now serving, or pursuant to USSG §5G1.3(d) to reduce its chosen sentence by the 18 months he has served since being written into federal custody.

**Background & Procedural History**

    a.  **Carr's NYS Arrest and 3-Years Prison Term, Federal Custody, and Jail Time Credit for Continued Incarceration.**

On February 18, 2022, having just turned 22 while serving concurrent 3- and 5-year N.Y.S.

probationary terms for crimes committed in his teens, Carr suffered a third State arrest for which he was charged with second degree assault. PSR ¶ 116. \ Writted from Riker's Island, Carr entered federal custody on December 14, 2022. PSR. p. 2; PSR ¶¶ 114-116.  On April 20, 2023, he having pleaded guilty to assault and the two probation violations, NYS sentenced Carr to concurrently determinate 3-year and one-year terms. See PSR ¶¶ 114-116.  See also December 1, 2022 NYS Guilty Plea Proceeding, pp 3-4; April 20, 2023 NYS Sentencing Proceeding, p. 3. annexed as Exhs. A & B.  In imposing sentence, the NYS Court expressed the hope that Carr's anticipated federal sentence, this Court's sentence, would also run concurrently.  Id. at p. 3.   On January 19, 2024, before the Hon. Katharine H. Parker, U.S.M.J., he pleaded guilty to Counts 7 (VICAR) and 22 (Aggravated Identity Theft) pursuant a December 16, 2023 plea agreement. PSR ¶¶ 30-31.

Citing NY Penal Law §70.30(3), Diane Holford of NYS DOCCS has assured me that, because NY lodged a detainer with BOP, the 18-months Carr has thus far served in pre-trial detention at MDC-Brooklyn will be credited toward his NYS sentences (*"The term of a definite sentence … imposed on a person shall be credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence."*).  Ms. Holford explained that, under New York law, jail time credit is determined by *why,* rather than *where,* a prisoner is in custody.  Pursuant to 18 USC §3585(b), however, because his time at MDC will be credited to his NYS sentence, BOP will not credit it toward Your Honor's soon-to-be-imposed sentence.  See 18 USC §3585(b)("[a]… defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences … *that has not been credited against another sentence."*) (italics added).

We anticipate that Carr will have served the entirety of his 3-year NYS prison term on February 18, 2025.

### Carr's Efforts at Rehabilitation While in Custody.

As reported in the PSR, Carr has availed himself of virtually every available opportunity for self-improvement.  PSR ¶32.  He has completed coursework in Basic Cognitive Skills Workbook, Conflict Resolution, Leadership & Influence, Commercial Driving Course, Carpentry Classes, The Ten Soft Skills You Need, Entrepreneurship, Business Ethics, Basic Bookkeeping, Budgets & Financial Reports, Marketing Basics, Business Acumen, Time Management, Developing Creativity, Sales Fundamentals, and National Parenting Program Phase One. Certificates available upon request. In addition, although Carr dropped out of high school first in 9th Grade and then again in the 11th Grade, PSR ¶148, he "desires to obtain his GED, but has been unable to enroll in the program at the MDC."  PSR ¶149.

Page 3
Leter to Hon. Furman, U.S.D.J.
May 8, 2024

### Carr Suffers Unduly Harsh Prison Conditions at MDC-Brooklyn.

In the belief that the Court is far too familiar with the litany of indignities imposed on inmates housed at MDC-Brooklyn,[1] I will forego recounting them all but what proved particularly insidious to someone with mental health challenges are the far-too-frequent facility lockdowns.  Occurring most often over weekends, typically from Friday afternoons to Monday mornings, Mr. Carr claims he has spent in excess of 164 entire days locked in his cell.   While he is not happy that sentenced inmates are obligated to share their PSR, plea agreement, and sentencing transcript in order to prove that they are not cooperators, because he recently suffered a razor slash to his face, a brand most typically imposed on informants, the former appears to be the lesser evil.  Finally, Mr. Carr laments that he is permitted to shower only 2 to 3 times a week.

### Carr's PSR Guidelines Analysis

The plea agreement and the PSR agree to the following:

- Assault with a Dangerous Weapon in Aid of Racketeering, 18 USC §1959(a)(3), U.S.S.G.§ 2E1.3 (a)(2), 2A2.2 Base Offense is Level 14.
- Specific Offense Characteristics: U.S.S.G. §2A2.2(b)(2)(B), Dangerous Weapon Used ,i.e., knife, increase 4 levels.
- Specific Offense Characteristics: U.S.S.G. §2A2.2(b)(3)(A), Victim sustained bodily injury, increase 3 levels.
- Adjusted Offense Level is Level 21.
- Acceptance of Responsibility, U.S.S.G. §3E1.1(a) & (b), decrease 3 levels.

Where the documents differ, however, is in Probation's conclusion that the never-before-incarcerated Mr. Carr is a Career Offender.  Pursuant to §4B1.1(b)(3), that determination increases the offense level to 32 and elevates his criminal history to Category VI.

- Accordingly, after a decrease of 3 levels for Acceptance of Responsibility this yields a Total Offense Level of 29, in Criminal History Category VI, yields a guidelines range of 151-188 months' incarceration.

*Compare*, Plea Agreement, pp. 2-3 *with* PSR ¶¶ 100-110.  Additionally, because Carr pleaded guilty to Aggravated Identity Theft, this is a mandatory 2-year prison term consecutive to the above guidelines range. USSG §2B1.6.  Rather than the 57-65-month range predicted in the plea agreement, Carr now has an absurd guideline range of 175-212 months. PSR p. 43.

### Based on §3553 Sentencing Factors Probation Finds that the Career Offender Guidelines Overstates Carr's Criminal History.

---

[1] See US v. Gustavo Chavez, ___ F.Supp.3d ____, 2024 WL 50233 (SDNY 2024) (Conditions are so bad that "[i]t is gotten to the point that it is routine for judges in this District and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC.")

Page 4
Leter to Hon. Furman, U.S.D.J.
May 8, 2024

Despite his "difficult upbringing, with a single parent under poor economic circumstances and involvement in the children services system …, his mental health challenges, including ADHD, ¶136, bipolar disorder, ¶140, the separation anxiety and unresolved childhood trauma brought on by court-enforced separation from his mother and placement in foster care, ¶138, resulting in behavioral issues and lack of impulse control", PSR p. 44, specifically: documented findings of physically abuse within the foster care system namely, hit with a belt and restrained, ¶139, asthma and heart murmur, ¶134, his academic struggles, ¶136, in-patient drug treatment history, ¶ 147, the 23-year-old Mr. Carr's enthusiastic embrace during his 18 months of pretrial detention of the rehabilitative opportunities at MDC, i.e., successful completion of 13 classes ranging from Conflict Resolution to Time Management, PSR ¶ 32, convinced Probation that the Career Offender designation on a youngster who has yet to serve a prison sentence "…while warranted and factually applicable in this case, may somewhat overstate the defendant's criminal history" PSR p. 43.  It recommends, instead, a variant term of 84-month. PSR p. 43.

In considering whether a career offender designation overstates a defendant's criminal history, the Second Circuit, n United States v. Mishoe, opined that a sentencing court may properly compare the amount of time served on the prior convictions to the range recommended by the guidelines. United States v. Mishoe, 241 F.3d 214, 218 (2d Cir. 2001)   Because "a major reason for imposing an especially long sentence upon those who have committed prior offenses *is to achieve a deterrent effect that the prior punishments failed to achieve,*" there should be "an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses."  Id. at 220 (emphasis added).

"Conversely, *if a defendant served no time* or only a few months *for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect." Id.*  See also United States v. Guzman, 2022 WL 1409583 at 2-3 (2d Cir. 2022)(collecting cases)(endorsing the concept of "incremental sentencing); United States v. Freeman, 447 Fed.Appx. 280 at 2 n.2 (2d Cir. 2012) (construing *Mishoe* as encouraging, rather than requiring, consideration of the proportionality between the new sentence and the defendant's prior sentences).

While his past conduct may well owe in part to its indifference, that society deserves a break from Mr. Carr is undisputed.  Where, however, the deterrent effect of a lesser term has never been determined, a career offender sentence is far greater than necessary to achieve the statutory purposes of sentencing.   Imposed at the ages of 16 and 18, two of his prior robbery convictions resulted only in probationary terms. PSR ¶¶ 112, 115.  While his third felony conviction drew a 3-year prison term, because he is still serving it, its deterrent effect has yet to be determined. PSR ¶116.

For these reasons, we respectfully as Your Honor to not impose a guidelines sentence of Career Offender, but instead the recommended 57-month variance.

**We Request a Concurrent Sentence to his NYS Undischarged Term of Imprisonment to Achieve the 57-Month Variance under 18 USC §3553(a), 18 USC §3584(a) & USSG 5G1.3(d).**

To achieve reasonable punishment that is "sufficient, but not greater than necessary, 18 USC §3553 (a), Carr respectfully asks Your Honor to exercise discretion and sentence him concurrently to his NYS prison sentence so that he may serve no more than the 57 months, or otherwise, adjust his federal sentence, to achieve this result by exercising its powers under 18 USC §3584(a) and 18 USC §3553. As in this case, when a court is faced with addressing multiple terms of imprisonment imposed on separate occasions, §3584(a) states that "[m]ultiple… terms of imprisonment run consecutively *unless the court orders that the terms are to run concurrently.*" In other words, §3584(a) contemplates circumstances where a court may want to exercise this discretion to achieve a reasonable sentence. <u>Setser v. United States</u>, 566 U.S. 231 (2012). In Carr's case were the Court not exercise its sentencing discretion, it would result in an unduly harsh prison term for it would increase his sentence from roughly 7-years, PSR p. 43, to 10-years for an individual who clearly is among the lowest and youngest members in this racketeering conspiracy. PSR p. 3 of 50; & ¶¶63 & 78.

As the Court knows, before being writted to SDNY on December 14, 2022, PSR ¶92, Carr was arrested by NYPD for a NYS felony assault charge and remained in custody at Riker's Island since February 18, 2022. See, PSR ¶ 116. At the time of this arrest he was serving NYS felony probation sentences of 3-years and 5-years respectively. ¶¶114 & 115. Prior to his December 14, 2022 SDNY Presentment, Carr had pleaded guilty and was awaiting sentence for his NYS arrest and violation of probation. See, Ex. A, 12/01/2022 NYS Guilty Plea Transcript, pp 2-4 (Carr pleaded guilty to Assault 2nd Degree and to a violation of NYS probation.); and PSR ¶¶114 -116. Carr has remained in federal detention at the MDC-Brooklyn since his initial appearance. However, he was sentenced in NYS Supreme Court to 3-years prison for Assault 2nd Degree for the February 18, 2022 arrest, PSR ¶116, and 1-year concurrent for the two probation violations for failing to live a law-abiding life. See. Ex. B. In imposing sentence the NYS Court expressed its hope made that Carr would serve his NYS sentence concurrently with his federal sentence. See Ex. B, 4/20/2023 NYS Sentencing Transcript, p 3 ("Three-years' incarceration with five-years post-release supervision, and one year as to the violation of probation, and one year as it relates to both of those. Sentence is imposed *to run concurrent* with his sentence of three to five years, as well as five-years post-release supervision *and federal sentence.* Sentence is imposed.") (italics added).

Despite Probation's conclusion pursuant to §1B1.3 that Carr's prior NYS sentence was not for conduct relevant to the Count I racketeering conspiracy, the Court retains the discretion to run it sentence concurrently to the state sentence Carr is presently serving, or at least to credit Carr for the time he has served in federal custody by reducing the Court's chosen term. To do so, Your Honor must simply conclude that cumulative sentences would be unduly harsh. See, USSG §5G1.3(d) (Policy Statement) ("In any other case involving an undischarged term of imprisonment, … [that does not fall into the category of Relevant Conduct] …the sentence for the instant offense may be imposed to run concurrently …[or]… partially concurrently…") The *Credit for Prior Custody* statute which expressly states that "[a]… defendant shall be given

credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... *that has not been credited against another sentence.".* 18 USC §3585(b) (italics added). Because his time in federal custody is being credited to his NYS sentence, BOP will not credit it toward this Court's sentence.

A close inspection of Carr's criminal history dating from 2016 to 2022, PSR ¶¶ 111-116, shows an overlap in time with his racketeering activity charged in Count 1, 2015-2022, it also reveals a similarity of criminal conduct, *compare* assault and theft charges, PSR ¶¶ 114, 116 *with* Counts 7 (Assault with a Dangerous Weapon in Aid of Racketeering) and 22 (Aggravated Identity Theft), and even an overlap with one of his co-defendants, Antwan Mosley. Prior to his present 18 months in pre-sentence detention, the 23-year-old Mr. Carr had never served any sentence. Thus, he had never been subject to any real deterrence. See PSR at ¶ 53. On the rationale of *Mishoe*, the Court might show some mercy and see if the sentence sought by the Government has the desired deterrent effect, before jumping to that recommended by the Probation Department or the Sentencing Commission. For these reasons, we respectfully ask the Court to take into account his NYS 3-year prison term and run the 57 months' the Government deemed satisfactory concurrently to the determinate 36-month term he is currently serving.

### Carr's Personal History & Role in the Racketeering Conspiracy.

As reported in the PSR, having participated in a single assault, Mr. Carr appears to be the least violent of the coconspirators. PSR ¶¶ 63, 92. At least as summarized here, he never initiated any violence, only participated in collective behavior, and simply did the minimum possible to live up to his friends' expectations. PSR ¶ 97. While he had a weapon on June 13, 2021, he refrained from wielding it. PSR ¶¶ 92. Save for a single aberrant teenaged misstep, PSR ¶ 112, his New York criminal record appears to conform to that interpretation. PSR ¶¶ 111-11

### Pertinent Programming: BOP RDAP

As requested, we are respectfully seeking that Mr. Carr receive drug treatment. In support of our request, 18 U.S.C. § 3553(a)(1) requires the court to consider "the kinds of sentences available." Although they are not binding, in that regard, Congress has directed the BOP to account for judicial recommendations relative to placement and programming decisions. 18 U.S.C. § 3621(b)(4) (A, B) (In designating prison placement, the BOP shall consider "any statement by the court that imposed the sentence (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate"). See U.S. v. Herrington, 187 Fed.Appx. 1402006, WL 1976165 (3d Cir. 2006) (together with the other § 3621(b) factors, the BOP should consider the sentencing judge's community confinement placement recommendation)

The Bureau strives to follow all judicial recommendations where possible, recognizing that they are carefully thought out and important to the sentencing courts who make them. Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 247 (3d Cir. 2005) (BOP regional counsel acknowledged at oral argument that BOP follows judicial recommendations in approximately

85–90% of cases). More recent BOP data claims at least partial compliance with 74 percent of recommendations. Recommendations are usually set forth in the judgment and commitment order's imprisonment section.

The PSR documents Carr's troubled mental and emotional health, which includes "unresolved childhood trauma" resulting in "behavioral issues and lack of impulse control", ¶¶136-142 & p. 44, his substance abuse disorder which includes the use of synthetic marijuana, lean, and codine and includes a stint in a youth in-patient drug treatment center, ¶¶ 143-147, and lack of education, ¶¶ 148 -151. He therefore asks that Your Honor recommend placement in the BOP's Residential Drug Abuse Treatment Program ("RDAP").

The BOP operates three drug abuse programs. Alan Ellis & Todd Bussert, *Residential Drug Abuse Treatment Program (RDAP)*, Criminal Justice (Winter 2016). https://alanellis.com/wp-content/uploads/2016/08/aba-rdap.pdf (last visited January 24, 2024). The first program is the 12- to 15-hour voluntary Drug Abuse Education Course offered at all institutions, designed to teach inmates about the consequences of drug/alcohol abuse and addiction by reviewing their personal drug use and the cycle of drug use and crime. Id. The second program is the 12- to 24-week (90–120 minutes per week) Non-Residential Drug Abuse Treatment Program (NRDAP), which is targeted to, *inter alia*, those awaiting RDAP, those who do not meet RDAP admission criteria, and those found guilty of an incident report for use of drugs or alcohol. Id. The third program is the nine-plus-month, 500-hour Residential Drug Abuse Treatment Program (RDAP) for inmates with a diagnosable and verifiable substance abuse disorder. Id.

Congress has provided that priority for substance abuse treatment is based on an eligible prisoner's proximity to release. 18 U.S.C. § 3621(e)(1)(C). According to statute, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C.A. § 3621(e)(2)(B). A sentence of 37 months or more can be reduced by 12 months, a sentence of 31-36 months can be reduced by 9 months and a sentence of 24 months or less can be reduced by no more than 6 months. BOP Program Statement PS 5331.02 at § 10 ("Early Release Procedures') (May 26, 2016). Because his offense involves possession of a firearm, Mr. Carr is ineligible for early release so, were he to receive the variant 60-month sentence he hereby seeks, Mr. Carr's successful completion of the RDAP program would result in no additional sentence reduction. See Id. at 550.55(b)(5)(ii)(" An offense that involved the carrying, possession, or use of a firearm…;)

RDAP facilities in the Northeast Region include Allenwood, Fort Dix and Schuylkill. See, https://www.bop.gov/inmates/custody_and_care/docs/rdap_locations_20180110.pdf; https://www.federalprisontime.com/rdap-locations ( each visited last on June 7, 2021).

Should the Court believe the requested recommendation warranted, I respectfully suggest that the court frames its recommendations in terms of the reasons underlying them. E.g. "The

Page 8
Leter to Hon. Furman, U.S.D.J.
May 8, 2024

Court recommends placement at FCI Danbury to permit participation in the RDAP substance abuse rehabilitation program."

### Placement

"[A] court may make a recommendation concerning the type of prison facility appropriate for the defendant; and in this calculus, the presence of a rehabilitation program may make one facility more appropriate than another." United States v. Crum, 843 Fed.Appx. 404, 2006 WL 1976165 (2d Cir. 2021)(citing Tapia v. United States, 564 U.S. at 334 (2011). "In determining whether to make a recommendation concerning the type of prison facility appropriate for the defendant, the court shall consider any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2)."  18 U.S.C. § 3582(a).  While 18 U.S.C. § 3621(b) neither requires that district courts make such recommendations nor that the BOP follow those that are made, see United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995) ("sentencing court has no authority to order that a convicted defendant be confined in a particular facility" because that decision is "within the sole discretion of the Bureau of Prisons"); accord Levine v. Apker, 455 F.3d 71, 83 (2d Cir. 2006); Thye v. United States, 109 F.3d 127, 130 (2d Cir. 1997), § 3621(b)(4)(B) does require the Bureau of Prisons ("BOP") to consider a district court's designation recommendation, among other factors, in discharging its responsibility for designating convicted federal defendants to appropriate penal facilities.

Because BOP nevertheless makes every effort to respect a district court's recommendations, Carr requests that the Court recommend placement in an RDAP facility in the Northeast Region, preferably Ft. Dix.  See 18 U.S.C. § 3621 (b)(4)(B); Bureau of Prisons Program Statements PS 5140.28 and PS 5070.10 § 7 (a) & (b); United States v. Potoski, 2010 WL 1909551 (09-0176-cr 2d Cir. May 13, 2010) (sentencing court may recommend place of imprisonment) (citing United States v. Yousef, 327 F3d 56, 165 (2d Cir. 2003)); Woodall  v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005) (same).

## Conclusion

Gang membership has provided Mr. Carr the support system both his biological and foster families failed to provide him. All memberships, however, come at a cost. All of Mr. Carr's criminality has been collaborative, undertaken in the context of a gang. Rather than an initiator, Mr. Carr seems to be someone who strives to live up to expectations. He thrives in programs and therapy, seemingly for similar reasons. He seeks approval and strives to "be seen." Probation recognizes that "[w]ith proper mental health and trauma-informed counseling, as well as strict supervision and disassociation with the gang, it is possible for …[Carr] to choose a law-abiding lifestyle upon his release." PSR p. 44. Nobody can say with any confidence that the 57-month-sentence the Government deemed satisfactory is insufficient to deter future criminal conduct but what is certain is that were Mr. Carr to face further charges in the future, he'd be a career offender with no arguments for mitigation left in his arsenal. While it would be the first time he's recently heard it, the Court should so inform him regardless of its chosen sentence. For the forgoing reasons, Mr. Carr respectfully requests that the Court sentence him as suggested and all of the other conditions recommended in the PSR.

Thank you.

Respectfully submitted,

*Richard Palma*
Richard Palma

cc: AUSAs Thomas J. Wright, Courtney Heavey, & USPO Nicolo L. DiMaria.
Encl.: Exhibits A & B, NYS Transcripts.